UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JOE LESLEY LUCKETT,

                Petitioner,

                               CASE NO. 04-CV-73037-DT

v.

                               PAUL D. BORMAN

MARY BERGHUIS,                UNITED STATES DISTRICT JUDGE

                Respondent.

_____/

## OPINION AND ORDER DENYING HABEAS CORPUS PETITION AND DENYING A CERTIFICATE OF APPEALABILITY

Petitioner Joe Lesley Luckett has filed a *pro se* habeas corpus petition under 28 U.S.C. §

2254. The habeas petition attacks Petitioner's state convictions for criminal sexual conduct in

the first degree. Respondent urges the Court to deny the petition, and the Court has determined

that Petitioner's claims lack merit. Accordingly, the habeas petition will be denied.

### I. Background

Petitioner was charged in Washtenaw County, Michigan with two counts of first-degree

criminal sexual conduct, MICH. COMP. LAWS § 750.520b(1)(f) (sexual penetration of another

person by force or coercion, causing personal injury). The complainant testified at trial that

Petitioner was an acquaintance of hers and that she permitted him to enter her home in Ann

Arbor about 12:30 a.m. on June 18, 1996. She claimed that, while the two of them were seated

on the couch, Petitioner put his arm around her and placed his hand near her face. She smelled

something unusual in Petitioner's hand and began to feel weak. She ran upstairs and hid in a

closet, but Petitioner found her and coaxed her out of the closet. Then he grabbed her and raped

her.  After she used the bathroom, Petitioner grabbed her and raped her a second time.
Eventually he left, and she went to work in the morning with her friend, Mary Johnson.  She told
Mary what had happened and later went to see a doctor.  The incident was then reported to the
police.

Petitioner's defense was that the complainant falsely accused him out of revenge for
engaging in a sexual relationship with her niece and for refusing to give her $500 when she was
in financial trouble and about to be evicted from her home.  The jury rejected this defense and
found Petitioner guilty as charged.  The trial court sentenced Petitioner to concurrent terms of six
to fifteen years on each count of criminal sexual conduct.

Petitioner moved for a new trial and a judgment notwithstanding the verdict on the
grounds that (1) he should have been permitted to refresh the complainant's memory with a
police report, (2) the evidence was insufficient to sustain the convictions because there was no
proof of injury and because the complainant's testimony was inconsistent, and (3) he had newly
discovered evidence of his innocence.  The trial court denied Petitioner's request to overturn the
jury's verdict and to grant a new trial.

### A.  Direct Review of the Convictions

On appeal from his convictions, Petitioner argued that (1) the trial court erred when it
denied his request for a transcript of the *voir dire*, (2) the trial court abused its discretion when it
denied his motion for new trial based on newly discovered evidence, (3) the trial court erred
when it admitted hearsay evidence regarding the complainant's prior consistent statements, and
(4) the trial court's erroneous ruling regarding "memory refreshed" deprived him of a fair trial.
The Michigan Court of Appeals affirmed Petitioner's conviction in part and remanded the case

2

so that the *voir dire* proceedings could be transcribed. *See People v. Luckett*, No. 208195 (Mich. Ct. App. June 18, 1999). Petitioner raised all but the transcript issue in the Michigan Supreme Court, which denied leave to appeal because it was not persuaded to review the questions. *See People v. Luckett*, No. 115208 (Mich. Sup. Ct. Jan. 31, 2000).

After the transcript of *voir dire* was prepared, Petitioner's appellate attorney moved to withdraw as appointed counsel because, in his opinion, there were no meritorious claims of error arising out of the jury selection. Counsel stated in his supporting brief that any claims of error relating to the jury array were waived by the lack of challenges to the array in the trial court. The Michigan Court of Appeals granted counsel's motion after determining that the appeal was wholly frivolous. The court of appeals then affirmed Petitioner's convictions a second time. The court of appeals stayed the judgment of affirmance for twenty-eight days so that Petitioner could raise any issue or question that he wished the court of appeals to consider. The court of appeals stated that it would treat Petitioner's communication as an application for rehearing. *See People v. Luckett*, No. 226782 (Mich. Ct. App. July 26, 2000). Petitioner moved for a rehearing, but the Michigan Court of Appeals denied his motion without explanation. *See People v. Luckett*, No. 226782 (Mich. Ct. App. Nov. 2, 2000). The Michigan Supreme Court denied leave to appeal because it was not persuaded that the questions presented should be reviewed. *See People v. Luckett*, No. 118273 (Mich. Sup. Ct. Apr. 30, 2001).

### B.  State Collateral Review

On or about November 6, 2001, Petitioner filed a motion for relief from judgment in which he alleged that: (1) he was prejudiced by the seating of a juror, who knew him and the complaining witness, (2) he was deprived of effective assistance of counsel at trial and on

3

appeal, (3) his constitutional rights were violated when the trial court refused to let defense witnesses testify, (4) his constitutional rights were violated by the admission of hearsay evidence, (5) he was denied his right to a polygraph and DNA test, and (6) he was denied effective assistance of counsel when trial counsel failed to suppress the warrant and complaint. The trial court denied Petitioner's motion on the grounds that the issues about juror bias and hearsay evidence were raised and rejected on appeal, the claims about his attorneys lacked merit, and his other claims could have been raised on appeal.

Petitioner appealed the trial court's decision without success. Both the Michigan Court of Appeals and the Michigan Supreme Court denied leave to appeal because Petitioner had failed to meet the burden of establishing entitlement to relief under Michigan Court Rule 6.508(D). *See People v. Luckett*, No. 242335 (Mich. Ct. App. Jan. 3, 2003); *People v. Luckett*, No. 123357 (Mich. Sup. Ct. Aug. 29, 2003).

Petitioner filed his habeas corpus petition on August 9, 2004. The grounds for relief are the same six claims that Petitioner raised in his motion for relief from judgment.

## II. Standard of Review

Petitioner is entitled to the writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "Avoiding these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam* opinion) (emphasis in original). "Furthermore, state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1)." *Baze v. Parker*, 371 F.3d 310, 318 (6th Cir. 2004), *cert. denied*, 544 U.S. 931 (2005).

If a state court has not addressed or resolved claims based on federal law, the decision is not an "adjudication on the merits," and a federal habeas court must review the claims *de novo*. *Howard v. Bouchard*, 405 F.3d 459, 467 (6th Cir. 2005), *cert. denied*, __ U.S. __, __, 126 S. Ct. 1032 (2006). When a state court disposes of a claim but fails to articulate its analysis, a federal court must determine whether the state court's decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts. *Id*.

### III.  Discussion

### A.  Juror Audrey Wilcox Hayes

The first habeas claim alleges that Petitioner was prejudiced by the seating of juror Audrey Wilcox Hayes. According to Petitioner, Ms. Hayes' ex-husband is the brother of Petitioner's former girlfriend. Petitioner claims that Ms. Hayes' presence on the jury resulted in prejudice and bias because she knew him and she might have known the complainant. The Michigan Court of Appeals determined that Petitioner's claim about the *voir dire* proceedings was frivolous.

The Sixth Amendment to the United States Constitution guarantees defendants in criminal cases the right to an impartial jury. U.S. CONST. amend. VI; *Wolfe v. Brigano*, 232 F.3d 499, 501 (6th Cir. 2000) (citing *Morgan v. Illinois*, 504 U.S. 719 (1992)). However, "due process does not require a new trial every time a juror has been placed in a potentially compromising situation." *Smith v. Phillips*, 455 U.S. 209, 217 (1982). "It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Irvin v. Dowd*, 366 U.S. 717, 723 (1961).

Ms. Hayes stated during *voir dire* that she was single, but that her ex-husband, whose name was Wilcox, was a police officer and detective for the City of Ypsilanti, Michigan. Ms. Hayes stated that she was divorced fifteen years ago but that she remained friends with Mr. Wilcox and saw him three or four times a year. Ms. Hayes also stated that her older sister had been the victim of a sexual assault when she was a child. Ms. Hayes said that she could not say one way or the other whether that experience would affect her verdict, but she explained that it would be an emotional reaction, not an intellectual one. When the trial court asked Ms. Hayes whether she could follow the court's instructions and give each side a fair trial, Ms. Hayes responded, "Yes, I can do that." (Tr. June 2, 1997, at 42-45.)

6

There is no indication in the record that Ms. Hayes knew either Petitioner or the complaining witness.  Furthermore, she assured the trial court that she could be a fair juror and follow the court's instructions.  She also voiced no concerns when the trial court asked whether any of the prospective jurors would have trouble reaching a "not guilty" verdict if the prosecutor failed to prove every element of the crime beyond a reasonable doubt.  (*Id*. at 20-21.)  Thus, there is no merit to Petitioner's claim of juror bias.  The state court's conclusion that the claim was frivolous did not result in a decision that was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court.

### B.  The Attorneys' Failure to Object to the Juror

The second habeas claim alleges that defense counsel was ineffective for failing to use a peremptory challenge to strike Audrey Wilcox Hayes from the venire and that Petitioner's appellate attorneys were ineffective for failing to raise the issue on appeal.  The trial court considered this claim in its order denying Petitioner's motion for relief from judgment.  The court stated that Petitioner had failed to overcome the presumption that counsel's performance fell within the wide range of reasonable professional assistance.

To prevail on his claim here, Petitioner must demonstrate that the state court's decision was contrary to, or an unreasonable application of, *Strickland v. Washington,* 466 U.S. 668 (1984).  The Supreme Court stated in *Strickland* that an attorney is ineffective if his or her performance was deficient and the deficient performance prejudiced the defense.  *See id* at 687.  An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness."  *Id*. at 688.  Deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Id*.

7

The defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

An attorney is entitled to deference when conducting *voir dire*," *Miller v. Webb*, 385 F.3d 666, 672 (6th Cir. 2004), and an appellate attorney is not required to raise every nonfrivolous argument urged by the appellant if the decision not to present an argument was a matter of professional judgment. *Evitts v. Lucey*, 469 U.S. 387, 394 (1985); *Jones v. Barnes*, 463 U.S. 745, 751 (1983). An attorney's "failure to raise an issue on appeal is ineffective assistance only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *Howard*, 405 F.3d at 485 (citing *Greer v. Michell*, 264 F.3d 663 (6th Cir. 2001)).

Petitioner claims to have informed his trial attorney that the only Wilcox who worked for the Ypsilanti Police Department fifteen years earlier was the brother of his former girlfriend. Trial counsel allegedly responded, "Don't worry about it. It will be alright." The attorney did not question Ms. Hayes, challenge her for cause, or use a peremptory challenge to excuse her. She remained on the jury and deliberated Petitioner's case.

Petitioner asserts that both his appellate attorneys withdrew as counsel for him without raising the issue on appeal. The record, however, indicates that Petitioner's first appellate attorney successfully argued for production of the transcript of *voir dire*. His second appellate attorney reviewed the record and determined as a matter of professional judgment that the claim was waived by the failure to challenge the array in the trial court.

There was no basis for objecting to Audrey Wilcox Hayes, because she never acknowledged knowing Petitioner or the complaining witness, and she stated that she could follow the trial court's instructions and decide the case fairly. Petitioner has failed to show that

8

Ms. Hayes was actually biased against him.  Therefore, trial counsel was not ineffective for failing to strike Ms. Hayes from the venire, and appellate counsel was not ineffective for failing to raise a claim of juror bias on appeal.  The state court's rejection of Petitioner's claim was not contrary to, or an unreasonable application of, *Strickland*.

### C.  Denial of Motion for New Trial

The third habeas claim alleges that Petitioner's constitutional rights were violated when the trial court refused to permit nine defense witnesses to testify.  Petitioner claims that Derrick Campbell and Brenda Greggs would have testified that the complaining witness blackmailed people, and the other witnesses would have supported an alibi defense.

### 1.  The Right to Present a Defense

"Few rights are more fundamental than that of an accused to present witnesses in his own defense." *Taylor v. Illinois*, 484 U.S. 400, 408 (1988) (citing *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973)).  "[T]his right is an essential attribute of the adversary system itself," *id*., and "a fundamental element of due process of law." *Washington v. Texas*, 388 U.S. 14, 19 (1967).  The trial court, however, did not refuse to permit defense witnesses to testify at trial.  Instead, the trial court denied Petitioner's motion for a new trial on the basis of newly discovered evidence concerning Derrick Campbell and Brenda Greggs.

A claim that a habeas petitioner is entitled to relief because the trial court refused to grant him a new trial on the basis of newly discovered evidence is not cognizable in a habeas proceeding. *Hence v. Smith*, 37 F. Supp. 2d 970, 980 (E.D. Mich. 1999) (Gadola, J.) (citing *Dickey v. Dutton*, 595 F. Supp. 1, 2 (M.D. Tenn. 1983)).  Claims of actual innocence based on newly discovered evidence are not "a ground for federal habeas relief absent an independent

constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact." *Id.* "[T]he threshold for any hypothetical freestanding innocence claim [is] 'extraordinarily high.'" *House v. Bell*, __ S. Ct. __, __, 2006 WL 1584475, at *23 (U.S. June 12, 2006) (quoting *Herrera*, 506 U.S. at 417).

Petitioner has not met the extraordinarily high threshold for freestanding claims of actual innocence. Mr. Campbell states in an affidavit dated September 13, 1997, that the complaining witness threatened to put him in jail on a false allegation of rape if he did not give her $396.00. Ms. Greggs states in an affidavit dated June 19, 1997, that the complaining witness falsely informed a married man whom she was dating that she was pregnant and needed money for an abortion. The complainant then used the money she received from the man to pay an overdue telephone bill. Ms. Greggs also states in her affidavit that the complainant admitted doing this on a few different occasions and that she (Greggs) had never known Petitioner to act violently.

The trial court determined that this evidence pertained to an ancillary matter, which could be used to impeach the complainant, but could not serve as a basis for a new trial. *See People v. Stricklin*, 162 Mich. App. 623, 632; 413 N.W.2d 457, 462 (1987) ("[N]ewly discovered evidence is not grounds for a new trial where it would be used merely for impeachment purposes."). The trial court believed that the new evidence would be suspect because Campbell was a prisoner with a history of several convictions and Greggs had a known bias against the complainant.

For the same reasons, this Court concludes that Petitioner has not submitted credible evidence of his innocence and that the trial court did not deprive Petitioner of his right to present

a defense.  Furthermore, the Michigan Court of Appeals did not deprive Petitioner of any federal constitutional right when it determined that the trial court did not abuse its discretion by denying Petitioner's motion for new trial.  Therefore, the state court decisions were not contrary to Supreme Court precedent, and Petitioner has no right to habeas corpus relief on the basis of his claim about newly discovered evidence.

### 2.  Failure to Produce the Witnesses

Petitioner also alleges that his trial attorney was ineffective for failing to produce Derrick Campbell, Brenda Greggs, and other individuals as witnesses.  The testimony of Campbell and Greggs, however, would not have produced a different result for the reasons given above.  And although Petitioner contends that other witnesses would have disputed Mary Johnson's testimony that she observed Petitioner's car at the complainant's home on the night in question, Petitioner has not specified what the prospective witnesses would have said.  He merely alleges that they lived closer to the complainant's home than the prosecution witnesses.

Unless the additional witnesses had actual knowledge of Petitioner's whereabouts during the date and time in question, they would not have helped the defense.  Two witnesses who did testify implied that Petitioner was not present at the complainant's home on the night in question. The jurors apparently found that testimony incredible.  They likely would have rejected the testimony of additional witnesses as well if the witnesses had nothing more substantial to add than that they lived near the complainant and were not aware of Petitioner's car being at the complainant's home in the early morning hours of June 18, 1996.  Therefore, the state court's rejection of Petitioner's claim about  defense counsel did not result in a decision that was contrary to, or an unreasonable application of, Supreme Court precedent.

### D.  Admission of Hearsay

The fourth habeas claim alleges that Petitioner's constitutional rights were violated when the trial court permitted the prosecutor to admit Mary Johnson's testimony concerning what the complainant told her on the morning after the alleged assault.  Ms. Johnson testified that the complainant informed her that Petitioner raped her three times during the previous night.  (Tr. June 4, 1997, at 132 and 139.)  Petitioner maintains that this testimony was inadmissible hearsay.

The trial court admitted the evidence on the ground that it was offered to rebut an express or implied charge of recent fabrication.  *See* Michigan Rule of Evidence 801(d)(1)(B).  The Michigan Court of Appeals declined to assess the propriety of the trial court's decision, because it determined that any error in admitting the evidence was harmless.

"[T]his Court 'must defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition."  *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (quoting *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)).  "Trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment."  *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir.) (citing *Estelle v. McGuire*, 502 U.S. 62, 69-70 (1991)), *cert. denied*, 543 U.S. 892 (2004).

The admission of Mary Johnson's testimony was not fundamentally unfair because, as the Michigan Court of Appeals recognized, the complainant's statements about the sexual assault were admitted through other witnesses whose testimony Petitioner does not challenge.  *See, e.g.,* Tr. June 3, 1997, at 187-91 (Carol Shultheis' testimony) and Tr. June 4, 1997, at 159-63

12

(Melanie Morgan's testimony).  Petitioner's own attorney elicited testimony about the complainant's incriminating comments to a police officer.  *See* Tr. June 4, 1997, at 41-42 (Detective Brian Zasadny's testimony).  Thus, the outcome of the trial would not have been different had Mary Johnson's testimony been excluded.  Because Petitioner was not deprived of due process or a fair trial, his evidentiary claim is not cognizable here.

To the extent that Petitioner raises a federal constitutional claim, the right implicated is the Sixth Amendment right to confront witnesses.  No violation of the Confrontation Clause occurred, because Petitioner was able to confront Ms. Johnson by cross-examining her at trial.  *California v. Green*, 399 U.S. 149, 164 (1970).  Therefore, the state court's decision was not contrary to clearly established federal law as determined by the Supreme Court.

### E.  Polygraph and DNA Test

The fifth habeas claim alleges that Petitioner was denied his constitutional right to take a polygraph examination and a DNA test.  Petitioner asserts that he asked his trial attorney about taking those tests and that his trial and appellate attorneys failed to investigate or pursue the matter.  The Court reviews this claim *de novo*, because no state court reviewed the claim on the merits.

Petitioner did not possess a constitutional right to take a polygraph examination to establish his innocence.  *See United States v. Scheffer*, 523 U.S. 303 (1998) (concluding that a military rule of evidence prohibiting polygraph evidence does not violate the constitutional right to present a defense).  Furthermore, the results of the test would not have been admissible at Petitioner's trial.  *People v. Barbara*, 400 Mich. 352, 411; 255 N.W.2d 171, 197 (1977).

Petitioner also had no constitutional right to a DNA test.  *Jimenez v. New Jersey*, 245 F.

13

Supp.2d 584, 586-88 (D. N.J. 2003). The police simply "do not have a constitutional duty to perform any particular tests." *Arizona v. Youngblood*, 488 U.S. 51, 59 (1988). A DNA test would have been useless in any event, because no foreign hairs or semen were found on the complainant's clothing or bed sheets. (Tr. June 4, 1997, at 53 and 55-57.) Thus, there was no evidence to compare to Petitioner's DNA. Petitioner's claim lacks merit and does not entitle him to relief.

### F. The Warrant and Complaint

The sixth and final claim alleges that trial counsel was ineffective because he failed to suppress the arrest warrant and the criminal complaint.

### 1. Procedural Default

Although Respondent alleges that this claim is procedurally defaulted, "[p]rocedural default is not a jurisdictional bar to review on the merits," *Howard*, 405 F.3d at 476, and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones,* 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)), *cert. denied*, 543 U.S. 880 (2004). Because it is easier to address the merits of Petitioner's claim than to perform a procedural default analysis, the Court will excuse the alleged procedural default.

### 2. The Merits of Petitioner's Claim

Petitioner alleges that the magistrate lacked probable cause to issue a warrant for Petitioner's arrest because the warrant was not based on personal knowledge. The Fourth Amendment states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be

14

seized." U.S. CONST. amend. IV. To prevail on a claim that defense counsel failed to raise a

Fourth Amendment issue, a petitioner must show (1) that his Fourth Amendment claim has merit

and (2) a reasonable probability that the verdict would have been different absent any excludable

evidence. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)).

Although the complainant did not sign the criminal complaint, Detective Laura Hobson

did sign the complaint. Detective Hobson obtained knowledge of the sexual assault when she

spoke with the complainant on June 24, 1996. (Tr. June 4, 1997, at 79.) Petitioner's identity as

the defendant was established through the complainant, who was acquainted with him. Thus,

there was probable cause to believe that a felony was committed and that Petitioner committed

the crime. The fact that the complaint was signed by Detective Hobson rather the complainant is

immaterial, because "probable cause may be founded on hearsay," *Franks v. Delaware*, 438

U.S. 154, 165 (1978), and the factual allegations of a criminal complaint in Michigan may be

based on information and belief, MICH. COMP. LAWS § 764.1a(3).

Furthermore, a state magistrate signed the arrest warrant, and a federal court must pay

"great deference to the determinations of probable cause made by a state magistrate . . . ."

*United States v. Weaver*, 99 F.3d 1372, 1376 (6th Cir. 1996) (quoting *United States v. Pelham*,

801 F.2d 875, 877 (6th Cir. 1986)). Even if the arrest warrant was facially invalid, a showing of

probable cause that Petitioner committed the charged offense was sufficient to justify the arrest.

*United States v. Fachini*, 466 F.2d 53, 57 (6th Cir. 1972). As for Petitioner's additional

contention that he was improperly bound over to circuit court on insufficient evidence, the

Supreme Court has stated that "a conviction will not be vacated on the ground that the defendant

was detained pending trial without a determination of probable cause." *Gerstein v. Pugh*, 420

15

U.S. 103, 119 (1975).

Petitioner has failed to show that the Fourth Amendment was violated by the procedures used in this case.  Therefore, his Fourth Amendment claim lacks merit, and defense counsel was not ineffective for failing to attack the complaint and arrest warrant.  Petitioner is not entitled to relief on the basis of his sixth claim.

## IV.  Conclusion

Petitioner's claims lack merit and do not warrant granting the writ of habeas corpus. Therefore, the application for a writ of habeas corpus [Doc. #1, Aug. 9, 2004] is DENIED.  The Court DECLINES to issue a certificate of appealability because reasonable jurists would not find the Court's assessment of Petitioner's claims debatable or wrong.  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).


S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  June 26, 2006

### CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on June 26, 2006.


S/Jonie Parker
Case Manager